Douglas R. FAVELL, Jr.,
et al., Plaintiffs,

v.

UNITED STATES, Defendant.

and related cases.

Donald A. TANNAHILL, Plaintiff,

v.

UNITED STATES, Defendant.

Nos. 525–76T, et al., 147–77T.

United States Claims Court.

June 16, 1992.

Charles L. Abrahams, La Mesa, CA, attorney of record, for plaintiffs.

Claims Court Section, Tax Div., Dept. of Justice, Washington, DC, with whom was the Asst. Atty. Gen., attorneys of record, for defendant.

## ORDER

HORN, Judge.

### BACKGROUND

The activity with respect to the instant motion to disqualify the United States Department of Justice from further representing the defendant and the Internal Revenue Service (IRS) in the related hockey players tax refund cases pending before this court appears to date back to June 12, 1991, when the defendant, United States, filed its motion for sanctions in *Tannahill v. United States*, Case No. 147–77, against the plaintiffs' counsel, Charles L. Abrahams. In its June 12, 1991 motion, the defendant asked for sanctions against the plaintiffs' counsel, Charles L. Abrahams, alleging that, in his capacity as plaintiffs' counsel, he had signed pleadings in the *Tannahill* case, one of the related hockey player tax refund cases, which he knew contained false statements; and, furthermore, that Mr. Abrahams had filed the petition in the *Tannahill* case without the

knowledge or consent of the named plaintiff, and without discussing filing the action in advance with Mr. Tannahill. Defendant's counsel, therefore, maintained that Mr. Abrahams knew that the statement in the petition filed by Mr. Abrahams on behalf of Mr. Tannahill, in which the plaintiff demands judgment against the United States, was untrue at the time it was filed. In support of the motion for sanctions, the defendant's counsel stated, in a declaration filed with the motion, that he had received a telephone call on June 6, 1991 from plaintiff Donald Tannahill. Defendant's counsel claimed that Mr. Tannahill had stated that he knew nothing about being a plaintiff in the United States Claims Court and, further stated that: "he never authorized Mr. Charles Abrahams to file any tax refund suit on his behalf.... He never discussed the filing of the suit with Mr. Abrahams, never hired Mr. Abrahams to act as his

attorney in this case and never saw the petition filed on his behalf." Mr. Tannahill also requested defendant's counsel to explain this court's Order, dated February 25, 1991, a copy of which he had just received in the mail.

On June 25, 1991, in response to defendant's June 12, 1991 motion in the *Tannahill* case, Mr. Charles Abrahams,[1] filed an opposition to defendant's motion for sanctions, together with a self-serving "Declaration of Charles L. Abrahams." Strangely enough, in the Declaration, Mr. Abrahams stated that his client had told the defendant's attorney that he had not heard from his lawyer, Mr. Abrahams, for almost fifteen years. Then, in August, 1991, Mr. Abrahams filed his two motions, both entitled "Motion & Memorandum of Law in Support of Motion for Sanctions, Including Disqualification of the Department of Jus-

---

**1.** Charles L. Abrahams, Esquire, originally filed notices of appearances in all two-hundred thirty-one (231) related hockey player tax refund cases, including *Donald A. Tannahill v. United States,* filed on behalf of hockey players in the United States Court of Claims and the United States Claims Court. Those cases originally filed in the United States Court of Claims were transferred to the United States Claims Court in 1982, after the enactment of the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25.

The Honorable Philip R. Miller, of the United States Court of Claims, and then of the United States Claims Court, presided over these cases until his retirement. During his time, 194 related cases were filed. Upon Judge Miller's retirement, all the hockey player cases were transferred to this Judge. Since then, 37 additional, similar tax refund cases have been brought, bringing the total number of related cases to 231. The cases were filed starting in 1976, until the most recently filed case was submitted to the court in 1990.

Over the years that these hockey player tax refund cases have been pending, a number of the plaintiffs have moved to dismiss the lawsuits filed by Mr. Abrahams on their behalf, have dismissed Mr. Abrahams as their counsel, have hired other counsel or have elected to proceed *pro se.* Thus far, nineteen (19) cases have gone to trial and thirteen (13) others are scheduled for trial. The balance of the remaining cases will be scheduled for trial *seriatim.*

Pursuant to Orders of this court dated February 22, 1991, 22 Cl.Ct. 571, and March 4, 1991, fifteen (15) of the related cases were dismissed for jurisdictional defects. On February 25, 1991, given the age of many of these cases, this

court issued an Order requiring the plaintiffs in all the related hockey player cases to file one of two attached Notices by June 28, 1991; "Notice A" was to be filed if the plaintiff desired to continue prosecuting his case, and "Notice B" was to be filed if the plaintiff wanted the court to dismiss his/her claims. Subsequently, on October 2, 1991, this court issued an Order dismissing with prejudice eight (8) of the related cases in which the plaintiffs had filed Notices B. Also on October 2, 1991, this court issued an Order dismissing eighty-eight (88) cases for failure to prosecute, in which the plaintiffs failed to send in either Notice A or Notice B by the June 28, 1991 deadline. However, the court allowed the filing of thirty-two (32) Notices A & B received as late as September 24, 1991, pursuant to an Order dated October 1, 1991. An Order issued on October 23, 1991 reinstated two (2) cases. In an Order issued January 15, 1992, this court dismissed two (2) additional cases. Two (2) cases were dismissed in February, 1992; five (5) cases were dismissed in March, 1992; and three (3) cases were dismissed in April, 1992.

The disposition of the hockey player tax refund cases has been delayed by the complexity of the issues, the large number of plaintiffs, the plethora of supporting documents filed in the cases, the need for successive judges to become familiar with the filings, and the many lengthy requests by the parties, especially Mr. Abrahams, for extensions of time and continuances in order to file motions and to prepare for the trials. Furthermore, the record in the related cases is replete with examples of Mr. Abrahams' refusal to comply with discovery requests and persistent disregard of court Orders to enforce those requests, which have required numerous enforcement proceedings.

tice and * * * [defendant's counsel],"[2] in *Tannahill v. United States* and also in all the other related hockey player tax refund cases, captioned *Douglas R. Favell, Jr., et al. v. United States,* Case Nos. 525–76T, *et al.*[3] In those parts of Mr. Abrahams' rambling motions to disqualify the United States Department of Justice and the defendant's attorney of record, he argues that both the Department of Justice and the individual Department of Justice attorney should be sanctioned and/or disqualified from further participation in the hockey player tax refund proceedings in the United States Claims Court, based on allegations that defendant's attorney of record had participated in *ex parte* discussions with Mr. Tannahill, and had committed other allegedly actionable errors towards his clients and himself, including impermissible, *ex parte* contacts with plaintiffs in these cases.[4]

On July 8, 1991, because of the ethical and personal nature of the allegations made against defendant's counsel of record, and because of the impending trial schedule in some of the related hockey player tax refund cases, this court ordered that the defendant's attorney of record be relieved, at least temporarily, from appear-

ing as defendant's counsel in the *Tannahill* case and in all the other related hockey player tax refund cases, until the court could hold an immediate fact-finding hearing and decide the merits of Mr. Abrahams' allegations.[5]

The court held a fact-finding hearing on Mr. Abrahams' motion to disqualify defendant's counsel on September 23 through 25, 1991, in San Diego, California, which was continued on October 15 through October 18, 1991, in Washington, D.C. The Department of Justice assigned substitute counsel to defend the interests of the defendant, the United States, and to represent the interests of the Department of Justice attorney against whom the charges had been made. The attorney for the plaintiff, Mr. Abrahams, did appear at the San Diego portion of the hearing and, in fact, testified in support of his motion. However, plaintiffs' counsel, Charles L. Abrahams, failed to appear at the Washington, D.C. continuation of the hearing on Mr. Abrahams' motion to disqualify the Department of Justice attorney, despite the fact that the court had set the dates for the second portion of the fact-finding hearing at a status conference on September 11, 1991,

2. "Defendant's counsel" refers to, and is substituted for, the name of the individual, who at the time Mr. Abrahams filed his motion to disqualify, was the attorney of record for the defendant. Because the court found, as is more fully described below, that the allegations brought by Mr. Abrahams were unfounded, the name of defendant's counsel at that time has been redacted from the text of this Order.

3. In order to broaden his request for sanctions and disqualification to all the other related hockey player tax refund cases, in addition to the *Tannahill* case, Mr. Abrahams filed a virtually identical motion in *Douglas R. Favell, Jr., et al. v. United States,* Case No. 525–76, *et al.* as in the *Tannahill* case. The text of the two motions is the same. However, attached to the motion in the *Favell, et al.* case, are several additional exhibits, marked Exhibit B, Exhibit C and a Declaration of Charles L. Abrahams, signed and dated July 18, 1991. This Order will address and dispose of the allegations made by Mr. Abrahams in the *Tannahill* case, the *Favell* case, and in all the other related hockey player tax refund cases, to disqualify the entire Department of Justice from further representing the

defendant in the related hockey player tax refund cases filed in this court.

4. This Order deals only with Mr. Abrahams' request to disqualify the United States Department of Justice from representing the United States in the related hockey player tax refund cases. The, now numerous, requests for sanctions filed by Mr. Abrahams, and by the defendant, against each other, which have been raised repeatedly throughout these proceedings, both in writing and orally, are deferred at this time, and will be the subject of later Orders of this court. Those portions of Mr. Abrahams' motion to disqualify defendant's attorney of record has already been rejected by this court in an Opinion issued in *Tannahill v. United States,* 25 Cl.Ct. 149 (1992). Defendant has not made a motion to disqualify plaintiffs' counsel.

5. The court had received urgent and repeated requests from senior representatives of the United States Department of Justice to resolve the charges against their colleague early enough to have him resume as counsel of record, if the court found he could continue on the cases, given his familiarity with all the 231 related hockey player tax refund cases to which he had been assigned in 1989.

almost six weeks prior to the commencement date of the hearing in Washington, D.C.[6]

Noting for the record the unusual nature of the proceedings which were about to occur, the court, nonetheless, decided to continue with the Washington, D.C. portion of the fact-finding hearing, even without the presence of Mr. Abrahams. This decision was made, in part, because the court felt it had an independent duty to determine whether improprieties had occurred as alleged by Mr. Abrahams, and also had a duty to resolve the charges without delay. It was also clear to the court that Mr. Abrahams had deliberately failed to appear at the continuation of the hearing. Furthermore, the court felt that Mr. Abrahams' actions were part of a consistent pattern of delay, designed to force the court to reschedule the five hockey player trials set to commence on December 2, 1991. Mr. Abrahams had made repeated requests to delay those trials, all of which the defendant had vigorously opposed. Moreover, numerous witnesses had made complicated and expensive arrangements to appear at the proceedings in Washington, D.C., which had been scheduled almost six weeks earlier, on September 11, 1991, and the court and the defendant had spent many hours preparing for the continuation portion of the hearing. The court, therefore, felt compelled to continue the hearing, as previously scheduled, and to allow the witnesses who were scheduled to appear in Washington, D.C. to testify.

On January 24, 1992, this court issued a lengthy Opinion on that portion of Mr. Abrahams' motion for disqualification of defendant's attorney of record both in the case of *Donald A. Tannahill v. United States* and the cases of *Douglas R. Favell, Jr., et al. v. United States*, including all the other related hockey player tax refund cases. In that Opinion, this court concluded that:

> ... based on the facts presented and the relevant precedent and ethical codes of conduct, this court concludes that there has not been a sufficient showing that any impermissible *ex parte* contacts took place and certainly no showing of prejudice resulting from any of the above conversations between defendant's counsel and a plaintiff, or his or her representative, to require the disqualification of defendant's counsel from the *Tannahill* case, or any of the other remaining related hockey player tax refund cases. With respect to each conversation at issue, defendant's counsel had reason to believe that the plaintiff was either not represented by Mr. Abrahams in the lawsuit in the Claims Court, or that the plaintiff had tried to dismiss Mr. Abrahams and did not intend to continue to use him as counsel.... The court makes particular note that defendant's counsel was the recipient of all seven telephone calls, and that the one call he attempted to place did not reach the plaintiff for whom the call was intended. Moreover, because each of the plaintiffs or their representatives placed their calls to the defendant's counsel at his office in the Department of Justice, there can be no question that each caller knew they were talking to an attorney who represented the defendant at the United States Department of Jus-

---

**6.** The court first received notice of Mr. Abrahams' deliberate refusal to attend the hearing in Washington, D.C. when it received a facsimile transmission from Mr. Abrahams on October 11, 1991, stating that although he understood that this court had denied his request for yet another continuance, he had decided that he would not attend the hearings scheduled to begin four days later. The hearing was convened as scheduled, on October 15, 1991, but Mr. Abrahams failed to appear. On October 16, 1991, the second day of the hearing in Washington, D.C., the court received another facsimile transmission from Mr. Abrahams, sent from his La Mesa, California office, confirming to the court that he had decided not to attend the hearing. The court was particularly surprised at a statement included in the October 16, 1991 facsimile from Mr. Abrahams which reads: "I had a hearing at 9:00 a.m. this day ..." The court can only surmise from Mr. Abrahams' facsimile submission that he may have intended, all along, not to appear at the hearing in Washington, D.C., because Mr. Abrahams had another hearing, in another city in California, also scheduled for October 16, 1991, the second day of the Washington, D.C. portion of the hearing in the motion he filed in the *Tannahill* and the *Favell, et al.* cases.

tice. In each of the calls, the attorney for the defendant carefully and deliberately avoided discussing the merits of the case and the evidence clearly shows that he did not try to improperly influence any of the plaintiffs or their representatives....

... Given the nature of the telephone system at the Department of Justice, which lists a direct dial number in the Department of Justice telephone directory for defendant's counsel, defendant's counsel could not control when a call was placed to that number. The attorney's duty, therefore, must be to refrain from discussing the merits of a case in which he or she knows a plaintiff is represented by counsel. It appears from the record before the court that defendant's counsel has met this responsibility in each of the situations brought to the court's attention.

Furthermore, the defendant, the United States, has the right to proceed with the counsel of its choice, which in this case is the attorney against whom the attorney for the plaintiffs has leveled the allegations at issue. Disqualification of the government's attorney and substitution of new counsel might well result in harmful delay and expense to the defendant, the United States. As has been previously noted by the court, these related proceedings are all extremely old and have been on this judge's docket and on the docket of the judge who was previously assigned the cases for many years. When all the factors are balanced, the court believes that there will be no prejudice to either the plaintiff, Mr. Tannahill, or to any of the other plaintiffs in the remaining, related hockey player tax refund cases, resulting from allowing defendant's counsel to resume as the attorney of record in each of these cases. Rather, it is the court's belief that the interests of the United States could suffer substantially if defendant's counsel were to be permanently disqualified and a new attorney had to be assigned and had to become familiar with all the remaining one-hundred twenty (120) hockey player tax refund cases.

It is this court's finding that resumption by defendant's counsel of his duties as attorney of record in the related hockey player tax refund cases is proper. *Tannahill v. United States*, 25 Cl.Ct. 149, 172–73 (1992).

Presently at issue before the court are those portions of Mr. Abrahams' "Motion[s] and Memorandum of Law in Support of Motion for Sanctions, including Disqualification of the United States Department of Justice and [defendant's counsel]," in the *Tannahill* case and in *Douglas R. Favell, Jr., et al.*, which seek to disqualify the entire Department of Justice from further representation in these cases. In the motions, Mr. Abrahams alleges that the United States Department of Justice engaged in various acts which he claims have tainted the proceedings in the related hockey player tax refund cases. Although this court generally tries to avoid quoting extensive portions of text from briefs or motions filed by parties in proceedings before it, the court is reluctant, in the instant case, to attempt to recast or summarize Mr. Abrahams' jumbled and repetitive allegations, some of which are lumped together for little apparent reason. The court has tried to address each of Mr. Abrahams' allegations seriously, despite the jumbled nature of his allegations and despite the lack of substantiation included in his papers. Therefore, begging the readers' indulgence for the repetition and length of this Order, the court has included substantial quotations from Mr. Abrahams' allegations, in the haphazard order presented by Mr. Abrahams in his motion. The court notes that Mr. Abrahams has in the past, and still continues to repeat these allegations throughout the proceedings, including during recent trials of several of the tax refund cases. The court feels, therefore, that despite the tedium involved, it is necessary to issue this written Order. Hopefully, the court can finally convince Mr. Abrahams that these allegations have been ruled on by the court and should be dropped from his repertoire, thereby, allowing the proceedings to continue more expeditiously.

In his motions to disqualify the United States Department of Justice, plaintiffs' counsel, Charles L. Abrahams, alleges as fact and charges that:[7]

* The Department of Justice participated in Grand Jury proceedings when perjury was used to obtain an indictment against Plaintiffs' Counsel to prejudice this Court in an effort to prevent a fair adjudication of Plaintiffs' claims.

* The Department of Justice filed documents with this Court and in other courts for the improper purpose of prejudicing the Court or to obtain a dismissal by interfering with the relationship between Counsel and the Plaintiffs.

* This Court by the recent filings of the Department of Justice and, in particular the request for sanctions as a result of the *ex parte* discussions with Mr. Tannahill and an unnamed Plaintiff became aware of the unethical practices of the Department of Justice.

On May 10, 1991, [defendant's attorney of record] acknowledged that he spoke to a litigant outside the presence of his counsel.

Again, on June 12, 1991, the Department of Justice filed a Motion for Sanctions and acknowledged *ex parte* interrogation of Plaintiff Donald Tannahill, Case No. 147–77. The motion accused Counsel of filing a false statement by requesting a judgment which was not authorized.

On June 25, 1991, An Opposition to the Motion for Sanctions was filed on behalf of Plaintiffs. Mr. Tannahill, after speaking to [defendant's attorney of record], dismissed his action. After Mr. Tannahill spoke to his Counsel, he filed a "Notice A" on or about Wednesday, June 26, 1991, revoking his dismissal.

* The record containing the previous court orders, stipulations and agreements between the parties, have been not only violated, but misrepresented by the Department of Justice to this Court. This has become a part of a persistent pattern and design to prejudice the fair administration of these related cases.

* On or about February 21, [1990],[8] Plaintiffs filed a Motion to Arrange a Conference and Requested a Stay Pending Such Conference. In that motion, the Plaintiffs provided a history of the Court orders and agreements especially those regarding suspension. The Plaintiffs apprised the Court and the Department of Justice as to the impropriety of the issuance of a summons by the Internal Revenue Service requiring all the documentation pertaining to some of these cases and for others who filed amended returns.

* In addition, the Plaintiffs submitted copies of the District Court order enforcing the Summons, the Motion to Dismiss the Indictment of Counsel, and the Tax Court settlement agreement resolving similar issues found in these cases. The Points and Authorities supporting the Motion to Dismiss contained all relevant Grand Jury testimony establishing a 'trumped up' charge designed to obtain an indictment of Counsel.

* The special agent informed the Grand Jury and Counsel's clients, including some of the Plaintiffs in the related cases, that the amended returns were false because deductions were taken for expenses on road trips that did not occur and, therefore not expended. The Department of Justice knew the amended returns involved a deduction for living expenses at their temporary job site at their team city.

7. The language included on these immediate pages are direct quotes from Mr. Abrahams' "Motion & Memorandum of Law in Support of Motions for Sanctions, Including Disqualification of the Department of Justice and ... [defendant's counsel]" filed in both the *Tannahill* and the *Favell, et al.* proceedings.

8. The motion filed by plaintiffs' counsel requesting a stay and a status conference was filed on February 21, 1990, although in the instant motions, Mr. Abrahams incorrectly refers to the filing date as February 21, 1991.

* The settlement of the Tax Court cases involving the same issues was also attacked because Plaintiffs believed a settlement was a better option than requesting sanctions, taking discovery or needless litigation.

* In May of 1989, the Department of Justice, without prior notice, issued notice of depositions requiring the attendance of nine (9) of the Plaintiffs in San Diego, California, some of those cases were in suspense.

* On May 30, 1989, Counsel sent a letter to [defendant's attorney of record] apprising him of statements made regarding discovery in support of the enforcement of the summons. Mr. Rubloff, [the predecessor to defendant's attorney of record] stated that the Summons was not issued improperly because there was no need for discovery. Mr. Rubloff stated by declaration that discovery was completed. Additionally, the letter was in response to the threat that the Department of Justice was going to inform Judge Horn of Counsel's indictment if Counsel refused to so inform the Court. Counsel advised the Department of the impropriety and ethical violations in persisting to inform Judge Horn of the indictment.

* In spite of such warning, the Department of Justice continued discovery requests by filing Motions to Compel and ignoring the discovery taken of the five (5) test cases [sic] Plaintiffs. Discovery was continued in spite of the Department of Justice's statement made to this Court that discovery had been completed.

* On May 30, 1989, a letter was sent to [defendant's attorney of record] apprising him of the intention to apply, for certification of the exclusion issue and requesting suspension because 'such would avoid two trials and serve to promote a settlement'.

* Reference was also made to what Counsel believed were violations of the Code of Professional Ethics, especially Rules 3.5; 8.4(a); 8.4(b); 8.4(e); and 8.4(f) by informing this Court of the indictment.

Model Penal Code Section 242.1 states it is a crime to obstruct justice and a felony to conspire to obstruct justice.

* The Motion for Stay filed on February 21, 1990, also requested a stay because of the *ex parte* discussions with some of the litigants by the special agent. The special agent as part of the investigation spoke to the Plaintiffs. It was clearly stated as reason for the request for stay that these discussions with these litigants would have an impact on all related litigants and would taint the entire proceedings unless the litigants were somehow informed of the merit of their claims.

* The related Plaintiffs, because they were involved in the same hockey industry, had probably heard about the indictment and the Internal Revenue Services statements which were made concerning their filing of false claims.

* The recent *ex parte* discussions with the litigants manifest a flagrant violation of Rule 11 of the Rules of the United States Claims Court (RUSCC) and various Canon of Ethics and Disciplinary Rules. The Department of Justice continues in its persistence to gain unfair advantage by either out-pricing the litigants or otherwise adversely tainting the entire proceedings, and thus, forcing the Plaintiffs to dismiss their action.

█ From each of these factual allegations and charges, plaintiffs' counsel, Charles L. Abrahams, somehow tries to conclude that the Department of Justice should be disqualified from further representation in the related hockey player tax refund cases. No factual affidavits have been offered to support Mr. Abrahams' motions to disqualify the Department of Justice, other than the self-serving "Declaration of Charles L. Abrahams," similar to Declarations which plaintiffs' counsel frequently attaches to his various requests for continuance or other relief. Moreover, most of the events which Mr. Abrahams alleges demonstrate impropriety on the part of the Department of Justice, if they occurred, would have taken place in pro-

ceedings unrelated to the hockey player plaintiffs tax refund claims. In fact, many of the events seem to have occurred in connection with investigations of Mr. Abrahams' own actions. Therefore, upon careful study of those portions of Mr. Abrahams' motions which seek to disqualify the entire United States Department of Justice, the court has concluded that the unsupported allegations made by Mr. Abrahams do not even allege facts sufficient to require additional fact-finding by the court and can be disposed of at this time without holding a hearing on those allegations.[9]

### DISCUSSION

*   *Mr. Abrahams Alleges that: "The Department of Justice participated in Grand Jury proceedings when perjury was used to obtain an indictment against Plaintiffs' Counsel to prejudice this Court in an effort to prevent a fair adjudication of Plaintiffs' claims."*

In the documents submitted to the court, Mr. Abrahams fails to set forth any evidence in support of his allegation that in Grand Jury proceedings in which the Department of Justice participated, perjury was used to obtain an indictment against Mr. Abrahams.[10] Nor does Mr. Abrahams specify when the Grand Jury proceedings in question are alleged to have occurred.

At a hearing held by the court on July 2, 1990, the court repeated its position that the allegations of impropriety at a Grand Jury hearing do not relate to the tax refund issues currently before this court in the related hockey player cases. It has not been suggested by either party that the indictment referred to was of any of the 231 hockey player plaintiffs who have brought tax refund cases in this court. Nor has any evidence been offered that the United States Department of Justice, or any of the individual attorneys in its employ, are in any way prejudiced against any of the plaintiffs in the tax refund lawsuits before this court. Furthermore, other than bald allegations that somehow the entire Department of Justice has acted improperly, Mr. Abrahams has not even alleged that any of the Washington-based Department of Justice officials involved in the defense of the instant tax refund lawsuits took part in the indictment process to which Mr. Abrahams refers in his motions.

From what the court has observed, the Department of Justice lawyers assigned to these tax refund cases have always treated the plaintiffs with respect and fairness. It appears that these charges brought against the Department of Justice by Mr. Abrahams are an attempt to clear his own name and have little bearing on whether or not any of the plaintiffs before this court are due a tax refund. There is also no evidence in the record before this court of any pattern by the Department of Justice to prejudice the plaintiffs' tax refund cases, as charged by Mr. Abrahams, by means of trying to obtain an indictment of plaintiffs' counsel, Mr. Abrahams.

As defendant properly notes in its opposition to Mr. Abrahams' motions, this court has previously ruled that the United States Claims Court is not the proper forum to seek relief for any allegations that Mr. Abrahams may have been improperly indicted. At the hearing on July 2, 1990, this court stated:

> I've neither seen the indictment, nor am I here to try that case. I'm an ex-prosecutor, so I take those things very narrowly. If that were my jurisdiction that would

9. With respect to those parts of the motion made by Mr. Abrahams to disqualify defendant's attorney of record, the court felt a fact-finding hearing was warranted because the Department of Justice had acknowledged some of the underlying factual allegations, such as the phone calls between Mr. Tannahill and defendant's attorney of record, but had disputed the details and the legal significance of those facts. As a result of those concessions, this court felt it was appropriate to hold a hearing to determine what actually had occurred, before issuing a decision on Mr. Abrahams request to disqualify defendant's attorney of record. As discussed above, after hearing and reviewing the evidence presented, the court ruled that defendant's attorney of record had not acted improperly.

10. Mr. Abrahams' allegation of the use of perjury is ambiguous as to whether the alleged perjury was committed by an individual employed by the IRS or by the Department of Justice.

be one thing. It is not. The reason for your indictment, with all due respect, is something that you will have an opportunity to prove or disprove at the appropriate time in the appropriate forum. This is not it.

At that same hearing, the court also stated:

I've got to tell you again that I really don't believe that we are here to give any ruling on the propriety or lack of propriety of alleged conversations that the IRS had with your clients. We're here on the papers that have been filed with this Court. If it's not in front of this Court, it isn't germane.

A lot of the information here that you have included in your February 21 [1990] papers are things that I can't even be sure I should take any account of whatsoever. There's grand jury testimony. There are all kinds of things that don't make a whole lot of sense to me in the context of this case.

Mr. Abrahams should not seek to air his own record and apparent past difficulties through the 231 related hockey player tax refund plaintiffs he has been representing. This court must treat separately the legal lives of Mr. Abrahams and of each of the plaintiffs who have filed tax refund cases with this court. Moreover, this court believes it has been impartial and can remain impartial regarding disposition of plaintiffs' tax refund cases filed in this court, regardless of any personal past history of Mr. Abrahams, who appears as their attorney. This court, therefore, concludes that Mr. Abrahams' allegations concerning the circumstances surrounding his alleged indictment do not support his motions brought to disqualify the United States Department of Justice in the related hockey player tax refund cases.

* *Mr. Abrahams Alleges that: "The Department of Justice filed documents with this Court and in other courts for the improper purpose of prejudicing the Court or to obtain a dismissal by interfering with the relationship between Counsel and the Plaintiffs."*

Mr. Abrahams alleges that defendant filed pleadings with this court and other courts for the improper purpose of prejudicing the court or to obtain a dismissal of the cases by interfering with the relationship between Mr. Abrahams and his clients. Mr. Abrahams, however, once again has not provided any evidence in support of his allegations in this regard. Although a number of documents Mr. Abrahams finds injurious to himself have been referred to in these pleadings to disqualify the Department of Justice, this particular allegation is typical of charges made by Mr. Abrahams throughout these related tax refund proceedings because it fails to identify any particular, allegedly offensive document. Although documents filed by the Department of Justice in opposition to those filed by Mr. Abrahams take positions in disagreement with positions put forward by Mr. Abrahams, the documents filed by the Department of Justice do not appear to be personally or improperly motivated.

As the court has repeatedly stated, the poor relationship between counsel for the parties, the numerous counter-allegations made by counsel in these proceedings, and any past legal dealings Mr. Abrahams may personally have had with the Department of Justice or the IRS, do not influence this court in any way. Moreover, given the concerns articulated by Mr. Abrahams, the court finds it curious that on his own, Mr. Abrahams has revealed most of his past dealings with Department of Justice to this court, both orally and in the self-serving statements included in written briefing materials filed with the court. This court will not allow these tax refund proceedings, in which Mr. Abrahams is supposed to be representing his clients, to be used as a forum to review and re-examine Mr. Abrahams' own encounters with the legal system.

Mr. Abrahams complains that there has been interference in his relationship with his clients because government investigators have allegedly had discussions with the plaintiffs in these actions about his past dealings with the Department of Justice. Mr. Abrahams' allegations, however, remain so vague that they cannot be action-

able. Moreover, based on the record to date, which establishes that many of the plaintiffs have not received copies of any of the filings in these cases, it appears highly unlikely that the plaintiffs, herein, have been served with or have seen any of the defendant's or Mr. Abrahams' filings in the tax refund cases containing various references to any indictment.

As pointed out above, the court finds itself able to proceed fairly, and to remain unprejudiced towards Mr. Abrahams, despite the number of tangents on which this court has been forced to spend significant quantities of time. The court does wish, however, that all the parties could move on to the serious business of resolving the tax refund cases brought by each of the plaintiffs. Mr. Abrahams complains frequently about the time and expense involved in litigating these related hockey players tax refund cases. However, motions such as the one which is the subject of the instant Order, contribute significantly to that burden.

\* *Mr. Abrahams Alleges that: "This Court by the recent filings of the Department of Justice and, in particular the request for sanctions as a result of the ex parte discussions with Mr. Tannahill and an unnamed Plaintiff became aware of the unethical practices of the Department of Justice."*

*"On May 10, 1991, [defendant's attorney of record] acknowledged that he spoke to a litigant outside the presence of his counsel."*

*"Again, on June 12, 1991, the Department of Justice filed a Motion for Sanctions and acknowledged ex parte interrogation of Plaintiff Donald Tannahill, Case No. 147–77. The motion accused Counsel of filing a false statement by requesting a judgment which was not authorized."*

*"On June 25, 1991, An Opposition to the Motion for Sanctions was filed on behalf of Plaintiffs. Mr. Tannahill, after speaking to [defendant's attorney of record], dismissed his action. After Mr. Tannahill spoke to his*

*Counsel, he filed a "Notice A" on or about Wednesday, June 26, 1991, revoking his dismissal."*

This court has fully addressed Mr. Abrahams' allegation that defendant's attorney of record had impermissible *ex parte* discussions with Mr. Tannahill and other plaintiffs in the related hockey player tax refund cases. In a long Opinion, dated January 24, 1992, referenced above, after an extensive, factual hearing on Mr. Abrahams' motion to disqualify defendant's attorney of record, this court concluded that Mr. Abrahams' had failed to prove that impermissible contacts had taken place between defendant's counsel and the plaintiffs or that any prejudice had resulted from any such alleged contacts. In its January 24, 1992 Opinion, this court wrote:

In conclusion, based on the facts presented and the relevant precedent and ethical codes of conduct, this court concludes that there has not been a sufficient showing that any impermissible *ex parte* contacts took place and certainly no showing of prejudice resulting from any of the above conversations between defendant's counsel and a plaintiff, or his or her representative, to require the disqualification of defendant's counsel from the *Tannahill* case, or any of the other remaining related hockey player tax refund cases. With respect to each conversation at issue, defendant's counsel had reason to believe that the plaintiff was either not represented by Mr. Abrahams in the lawsuit in the Claims Court, or that the plaintiff had tried to dismiss Mr. Abrahams and did not intend to continue to use him as counsel. Each of the telephone calls was brief. Although it is certainly not this court's intention to set a length of time after which a telephone call constitutes an impermissible contact and requires a *per se* disqualification of counsel, none of defendant's counsel's contacts came anywhere near the hour and one-half call which resulted in disqualification in the *Papanicolaou* case.[11] The court makes particular note that defendant's counsel was the recipient of all

---

11. *Papanicolaou v. Chase Manhattan Bank, N.A.,*    720 F.Supp. 1080 (S.D.N.Y.1989).

seven telephone calls, and that the one call he attempted to place did not reach the plaintiff for whom the call was intended. Moreover, because each of the plaintiffs or their representatives placed their calls to the defendant's counsel at his office in the Department of Justice, there can be no question that each caller knew they were talking to an attorney who represented the defendant at the United States Department of Justice. In each of the calls, the attorney for the defendant carefully and deliberately avoided discussing the merits of the case and the evidence clearly shows that he did not try to improperly influence any of the plaintiffs or their representatives. Moreover, in the case of plaintiffs Stemkowski and Tannahill, defendant's counsel had reason to believe that Mr. Abrahams was not that plaintiff's counsel at the time of the conversation.

Although it might have been more prudent for the defendant's counsel not to have tried to place the call to Mr. Tannahill, by himself, the court finds that, among other reasons, because it was unsuccessful, this action could not have prejudiced the plaintiff's case and, therefore, cannot be found to have tainted the proceedings in the *Tannahill* case or in any of the other related hockey player tax refund cases. Given the nature of the telephone system at the Department of Justice, which lists a direct dial number in the Department of Justice telephone directory for defendant's counsel, defendant's counsel could not control when a call was placed to that number. The attorney's duty, therefore, must be to refrain from discussing the merits of a case in which he or she knows a plaintiff is represented by counsel. It appears from the record before the court that defendant's counsel has met this responsibility in each of the situations brought to the court's attention.

Furthermore, the defendant, the United States, has the right to proceed with the counsel of its choice, which in this case is the attorney against whom the attorney for the plaintiffs has leveled the allegations at issue. Disqualification of the government's attorney and substitution of new counsel might well result in harmful delay and expense to the defendant, the United States. As has been previously noted by the court, these related proceedings are all extremely old and have been on this judge's docket and on the docket of the judge who was previously assigned the cases for many years. When all the factors are balanced, the court believes that there will be no prejudice to either the plaintiff, Mr. Tannahill, or to any of the other plaintiffs in the remaining, related hockey player tax refund cases, resulting from allowing defendant's counsel to resume as the attorney of record in each of these cases. Rather, it is the court's belief that the interests of the United States could suffer substantially if defendant's counsel were to be permanently disqualified and a new attorney had to be assigned and had to become familiar with all the remaining one-hundred twenty (120) hockey player tax refund cases.

*Tannahill v. United States,* 25 Cl.Ct. at 172–73.

Therefore, since in its earlier Opinion this court fully has addressed and dismissed Mr. Abrahams' allegations that defendant's counsel had impermissible *ex parte* contacts with the Mr. Tannahill and other plaintiffs in the related hockey player tax refund suits, the court sees no need to address this issue any further.

* *Mr. Abrahams Alleges that: "The record containing the previous court orders, stipulations and agreements between the parties, have been not only violated, but misrepresented by the Department of Justice to this Court. This has become a part of a persistent pattern and design to prejudice the fair administration of these related cases."*

* *Mr. Abrahams Alleges that: "On or about February 21, [1990],[12] Plaintiffs filed a Motion to Arrange a Conference and Requested a Stay Pending*

12. See footnote 8, above.

*Such Conference. In that motion, the Plaintiffs provided a history of the Court orders and agreements especially those regarding suspension. The Plaintiffs apprised the Court and the Department of Justice as to the impropriety of the issuance of a summons by the Internal Revenue Service requiring all the documentation pertaining to some of these cases and for others who filed amended returns."*

Mr. Abrahams alleges that the Department of Justice has violated previous court orders, stipulations and agreements between the parties. Once again, however, his allegations lack specificity, and fail to identify which court Orders, which stipulations and which agreements Mr. Abrahams believes have been violated or misrepresented.

Defendant responds to Mr. Abrahams' allegations by maintaining that the Department of Justice did not violate agreements regarding settlement, certification and discovery. Defendant points out that this court has previously remarked on Mr. Abrahams' allegations regarding broken agreements and violated court orders at a status conference on July 2, 1990.

At the July 2, 1990 status conference, the court stated:

I don't agree with you that all of the cases old and new have been in a state of suspension all of this time. I can see where you might have derived some confusion. I think that clearly the stay that Judge Miller fashioned, which was the one that I think you're going back to, really went to and up to the one point that the motion for summary judgment was decided.[13]

The summary judgment motion occurred in lieu of trial. Originally, yes, you're correct, there were to be a selected number of trials and the stay was to extend until those trials occurred. The proceedings went in a different direction both under Judge Miller's tenure and then under mine....

Certainly for cases that were never even on file with the Court at the time that any discussions related to the stay, those cases were not stayed. They never were part of that agreement. Even Mr. Rubloff,[14] with whom you now say you had all these wonderful understandings and agreements, could not bind the government or the Judge or anyone to a stay on cases that hadn't even been filed while he was with the Department.

Later at the same conference, the court also commented:

Obviously when new attorneys come in things change. But that's the right of the Department of Justice. I don't see anything that the counsel who have succeeded to this case have done that's improper in any way. They have taken a somewhat different approach than Mr. Rubloff....

In a recently filed "Opposition to Plaintiffs' Motion for Suspension [filed by plaintiffs' counsel to reschedule the six cases scheduled for trial in Pasadena, California in June, 1992] or in the Alternative a Continuance," defendant addressed alleged agreements regarding factual concessions in the tax refund cases, which Mr. Abrahams repeatedly argues to this court were reneged on by the defendant. The defendant correctly characterizes the situation as follows:

Mr. Abrahams asserts in paragraph 4 of his May 29, 1992, declaration ... that the Court should have advised his clients that the government conceded the training camp exclusion during the hearings on the parties motions for partial summary judgment. It is true that the gov-

---

**13.** The court had granted defendant's cross-motion for partial summary judgment and denied plaintiffs' motion for summary judgment, holding that no portion of the hockey players' salary was to be allocated to the off-season, and that the contracts at issue did not contemplate the off-season as being a contractually compensated period. *Favell v. United States,* 16 Cl.Ct. 700 (1989). The court further had held that the

requirement to arrive at training camp in good physical condition is a contractual condition. *Id.*

**14.** Mr. Rubloff was counsel of record for the Department of Justice prior to the present counsel of record, and prior to the attorney of record Mr. Abrahams sought to have disqualified.

ernment conceded that, under the terms of the NHL Standard Players Contract, a hockey player was compensated for the period beginning with training camp, and ending with the conclusion of the regular season, or when the team is eliminated from the playoffs. (Hearing of July 10, 1987, Tr. 10.) However, government's counsel at the time, Gilbert Rubloff, made it clear that the government was not making any factual concessions, and would defer to the facts submitted by Mr. Abrahams solely for purposes of resolution of the pending summary judgment motions. (Hearing of July 10, 1987, Tr. 14.) The government has never conceded, as suggested by Mr. Abrahams, that any particular 'hockey player' plaintiff is entitled to exclude any 'foreign source' income, and such a determination depends on the facts of each case. Therefore, the Court properly advised Mr. Abrahams' clients that there was no concession by the government which would entitle them to a refund.

Admittedly, the record in these related hockey player tax refund cases is long and tortured. Because it appeared to the court that the parties were not in agreement as to the schedule and seemed confused as to the procedural status of the related hockey player tax refund cases, at a status conference on March 21, 1991, the court emphasized that the only schedule applicable to the proceedings in the related hockey player tax refund cases would be the schedule set up from that conference forward. The court addressed Mr. Abrahams as follows:

You don't have anything other than what we have decided today. All the systems that you set up in the past with Judge Miller, with Mr. Rubloff, with anybody else, didn't work.

Don't try again to say you had a schedule. It didn't work. We're 15 years into the process. I don't even want to hear it. We discussed that all this morning. Whatever schedule we're on is the schedule we're going to pick now.

You've had plenty of opportunity, Mr. Abrahams, to do all kinds of neat things, cooperate, not cooperate, you've done it all. We have a new schedule. We have

a new time. We're rolling. We're steamrolling if we have to. I'll put everything else aside and I'm going to get through this. That's the bottom line.

Among the allegations made by Mr. Abrahams periodically throughout these proceedings are allegations that the Department of Justice has violated an agreement to end discovery in these cases while these cases were pending before Judge Miller. Initially, this court notes that it retains the discretionary right to allow discovery to be reopened in a case under appropriate circumstances, even if discovery formally had been closed by a prior assigned judge. Additionally, the court would point out that a number of these cases were filed long after the bulk of the cases were transferred from Judge Miller to this Judge. Nonetheless, as stated by the Department of Justice in a recent filing dated September 19, 1991 in opposition to the instant motion:

It has been alleged that defendant misrepresented the facts to this Court by stating that no discovery had been conducted in the pre–1989 cases, because defendant issued notices of deposition for some pre–1989 plaintiffs in May, 1989. However, the notices were withdrawn before any subpoenas were issued or any attempt made to take the noticed depositions. The defendant is, therefore, correct when it says that no discovery was conducted in the pre–1989 cases until after March 21, 1991.

It also appears that Mr. Abrahams sometimes confuses pretrial exchange of documents and discovery. Certainly, the court has attempted to assist the parties to engage in an orderly exchange of documents prior to each scheduled trial. Unfortunately, Mr. Abrahams has frequently refused to comply with pretrial document exchange production dates, even when backed by a subpoena issued by the Department of Justice or when court ordered. The situation is further confused because, due to the apparently disorganized files maintained by Mr. Abrahams in these cases, even on the eve of, or during trials, Mr. Abrahams seems to produce additional, relevant docu-

ments to his clients' interest, which have never been produced before, despite previous requests for production by the Department of Justice and court Orders to enforce the production requests.

In a filing dated February 21, 1990, entitled "Motion for Stay of All Related Proceedings and to Set a Pretrial Conference in Washington, D.C. or, Alternatively, for an Extension of Time to Respond to the Motion to Dismiss," Mr. Abrahams seems to argue that he has documentation of some of the prior agreements between counsel and court orders regarding suspension. The court notes again that it specifically denied the motion by the plaintiffs and their counsel for the stay at a status conference held on July 2, 1990. The court explained its rationale in denying Mr. Abrahams' motion as follows:

It's even more strange for me to understand why you would ask for a suspension for all of the proceedings, which would obviously include stay of discovery requests and motions to compel on the part of the government, which means that they can't prepare for a trial, and also ask for a pretrial conference date. So that doesn't make any sense either.

With respect to the motion to stay specifically. I am going to deny that at this time. We are going to move this case forward. That means that you will have to respond to the government's discovery requests. You will have to file answers to whatever papers remain unfiled in this proceeding.

I am always ready, willing, and very happy to suspend proceedings if I believe that there is real negotiation progress between the parties, or some kind of settlement can be achieved. I don't see any signs in this case of that at all. In fact, it was essentially [w]hat I was waiting for before today, to see some notion, after the decision on the summary judgment motion, that there were some discussions between the parties.

Furthermore, as with Mr. Abrahams' present motions for disqualification of the entire Department of Justice, plaintiffs' February 21, 1990 motion was unsubstantiated by copies of actual agreements between the parties or court orders. In support of the February 21, 1990 motion, Mr. Abrahams attached only two documents regarding settlement of cases filed years ago in the United States Tax Court, not in the United States Court of Claims or United States Claims Court,[15] and a self-serving brief submitted by Mr. Abrahams, on his own behalf, in support of a motion to dismiss an indictment against himself, Charles L. Abrahams.

In a written Order dated March 22, 1991, this court clearly confirmed its intention to move the cases forward toward trial and to set a schedule to resolve all the remaining cases. The court stated:

The court believes that, at this time, given the nature and history or these cases, that the use of a test case or several test cases for the purposes of further discovery will not serve the interests of justice of individual plaintiffs because such test case(s) will not necessarily address all the issues involved in each of the cases. Each individual tax case presents different facts for each plaintiff taxpayer which cannot be resolved by example from another case.

In a March 22, 1991 Order, the court also clearly stated its belief that certification to the Court of Appeals for the Federal Circuit would not advance the progress of these related cases, since there would be remaining factual issues in each of the individual refund suits, regardless of review on the legal issue which was the subject of this court's lengthy Opinion of April 26, 1989 addressing the parties' cross-motions for summary judgment. *Favell v. United States*, 16 Cl.Ct. 700 (1989). In the April 26, 1989 Opinion, the court again specifically addressed the issue of any prior stays and suspensions in order to be certain that all the parties and counsel in

---

**15.** The court notes that Mr. Abrahams stated in his February 21, 1990 motion for a stay that the attachment pertained to the Claims Court proceedings. However, the attached document clearly states on its face, "This settlement *applies only* to the 220 (approximate) cases currently docketed *in the Tax Court* (except *Hanna* and *Stemkowski* )." (Emphasis added.)

these related cases understood that any prior-issued stays in these related cases dating back to when this Judge inherited the cases from Judge Miller all were clearly lifted. The court stated:

> Once again, the Court reminds the parties that even if it did grant certification, issues pertaining to individual deductions claimed by specific plaintiffs would still remain to be resolved in each of the cases. Thus, certification would likely result in a further delay to each of these cases. Regardless of any decision rendered by the Federal Circuit, the very real possibility remains that all or many of these cases would nonetheless have to move towards trial in this Court. Although settlement discussions have taken place over and over again, and there have been allegations of breached settlement agreements, after more than fifteen years of pending litigation in these cases in both this Court and this Court's predecessor, the United States Court of Claims, there can be no certainty, and it even seems unlikely, that settlement will occur.
>
> *All prior Stays or Suspensions to any of these proceedings are hereby lifted. Schedules will be issued pertaining to each case. The first of these Scheduling Orders is included in this Order.* [Emphasis added.][16]

Mr. Abrahams also tries to argue that the Internal Revenue Service improperly issued a summons to plaintiffs' counsel "requiring all the documentation pertaining to some of the related hockey player tax refund cases and for others who filed amended returns." For substantiation, Mr. Abrahams cites only to the motion that he filed on February 21, 1990 for a stay of the related proceedings. However, plaintiffs' counsel once again does not set forth any clear documentary evidence of any improper actions taken in regard to such summons in either the present motions for disqualification of the Department of Justice, or in the prior February 21, 1990 motion. Furthermore, Mr. Abrahams alleges that

the Internal Revenue Service (not the Department of Justice) issued the summons. Assuming plaintiffs' counsel is correct, any wrongdoing on the part of the Internal Revenue Service does not support Mr. Abrahams' present motions for disqualification of the Department of Justice.

\* *Mr. Abrahams alleges that: "In addition, the Plaintiffs submitted copies of the District Court order enforcing the Summons, the Motion to Dismiss the Indictment of Counsel, and the Tax Court settlement agreement resolving similar issues found in these cases. The Points and Authorities supporting the Motion to Dismiss contained all relevant Grand Jury testimony establishing a 'trumped up' charge designed to obtain an indictment of Counsel."*

Mr. Abrahams alleges that he submitted copies of the District Court order enforcing the Summons, the Motion to Dismiss the Indictment of Counsel, and the Tax Court settlement agreement. First, the court notes that Mr. Abrahams did not submit the above documents as exhibits to either of the motions to disqualify the Department of Justice. The Motion to Dismiss the Indictment of Counsel and a Tax Court settlement agreement were submitted as exhibits to plaintiffs' counsel's February 21, 1990 motion for a stay of the proceedings. Although Mr. Abrahams also alleges that the points and authorities supporting the motion to dismiss the indictment of plaintiffs' counsel "contain all relevant Grand Jury testimony establishing a 'trumped up' charge designed to obtain an indictment of Counsel," the court finds that this document, which is a self-serving, argumentative set of papers, also without any documentary support, does not provide any basis upon which Mr. Abrahams can support his present motions for disqualification of the Department of Justice. Finally, after careful review of the documents filed, this court still has not found a copy of the District Court order enforcing the

---

**16.** See also the discussion on the request for Certification of the court's Decision on partial summary judgment below.

summons. Regardless, the court finds that these documents are irrelevant to the refund claims brought by the individual taxpayers currently before this court, and do not support Mr. Abrahams' allegations that the Department of Justice should be disqualified from representation of the defendant in the related hockey player tax refund cases.

With respect to the Motion to Dismiss the Indictment of Counsel, once again plaintiffs' counsel, Charles L. Abrahams, confuses his own difficulties with the merits of the tax refund cases of his clients. Speaking on behalf of the defendant and the Department of Justice, defendant's counsel clearly stated:

> Whether or not the Points and Authorities supporting the Motion to Dismiss contained evidence regarding the Grand Jury proceedings also is not grounds for disqualifying the Department of Justice. It might be plaintiffs' counsel's view that this document proved the indictment unwarranted, although the defendant has not been heard from on this point, the document still remains irrelevant to the tax refund cases at issue here. Once again, plaintiffs' counsel is trying to confuse his own past with future of his clients' lawsuits.

Any indictment of Mr. Abrahams and the tax refund claims of his client must remain separate from the merits of the tax refund claims of the plaintiffs who Mr. Abrahams represents as counsel, and will be treated as such by this court.

There is absolutely no evidence in the record to suggest that any settlement terms have been agreed to by plaintiffs and the defendant in the lawsuits filed in this United States Claims Court, regardless of any offers of settlement which may have been made or negotiated in the United States Tax Court. Despite repeated requests by the defendant and by the court to produce written evidence of such a settlement in this court, Mr. Abrahams has failed to do so. Moreover, as is more fully discussed below, counsel for the defendant has consistently rejected Mr. Abrahams' notion that a settlement was ever achieved

in the cases filed in the United States Claims Court.

* *Mr. Abrahams Alleges that: "The special agent informed the Grand Jury and Counsel's clients, including some of the Plaintiffs in the related cases, that the amended returns were false because deductions were taken for expenses on road trips that did not occur and, therefore not expended. The Department of Justice knew the amended returns involved a deduction for living expenses at their temporary job site at their team city."*

Mr. Abrahams alleges that some unspecified special agent informed the Grand Jury and some unspecified plaintiffs in the related hockey player tax refund cases that unspecified amended returns were false, and that the Department of Justice "knew the amended returns involved a deduction for living expenses at their temporary job site at their team city." These allegations, as brought by Mr. Abrahams, are extremely vague and confusing, and are not accompanied by supporting documentation for the purposes of either clarification or substantiation. In order to be able to act on Mr. Abrahams' allegations, the court would have to know which plaintiffs, which amended returns and which deductions are being discussed in the allegation, as well as be provided with an indication of which special agent is alleged to have made such statements. With regard to these charges, this court finds no grounds to proceed further or to disqualify the Department of Justice.

* *Mr. Abrahams Alleges that: "The settlement of the Tax Court cases involving the same issues was also attacked because Plaintiffs believed a settlement was a better option than requesting sanctions, taking discovery or needless litigation."*

Mr. Abrahams states that "The settlement of the Tax Court cases involving the same issues was also attacked because Plaintiffs believed a settlement was a better option than requesting sanctions, taking discovery or needless litigation." The court finds that this allegation is incoher-

ent. Mr. Abrahams does not give any documentary support for this allegation and fails to tie it in to any alleged wrongdoing on the part of the Department of Justice during the proceedings of the related hockey player tax refund cases before the United States Court of Claims or the United States Claims Court. Later in his papers, Mr. Abrahams also states:

In spite of these warnings, the Department of Justice has taken exhaustive discovery of the same test cases and others. *They have in bad faith, refused to settle.* Sanctions are appropriate pursuant to the dictates of Rule 11. There are numerous cases imposing sanctions when there have been less severe misconduct. [emphasis added]

The court fails to understand Mr. Abrahams' allegations since he chose to file the 231 tax cases in the United States Claims Court on behalf of the plaintiffs.[17] Any counsel or plaintiff who files a lawsuit in a court of law must be prepared to see the case through the full course of litigation. Settlement is an option to be exercised by parties to a lawsuit jointly. It means that the parties have reached a mutual agreement as to the terms of the resolution. No such mutual understanding has been achieved in these related hockey player tax refund cases. Certainly, the Department of Justice should not be faulted for deciding that settlement terms offered by plaintiffs are not acceptable to the Department of Justice and their client, the Internal Revenue Service. Refusal to accept a settlement proposal, which is considered not to be in a party's best interest, is not an indication of bad faith. The attorney for the Department of Justice has repeatedly stated on the record that the Department of Justice and the Internal Revenue Service have definitely not agreed to settle these cases and are prepared to proceed to trial. In an oral argument before this court on Mr. Abrahams' motion to disqualify the court, held on June 27, 1991, the defendant stated its very clear position that no settle-

ment has been achieved in the related hockey player tax refund cases:

But Your Honor, there is nothing in this letter that indicates that the Government will settle. It indicates that they hope that—and I think that several of the other filings that have been filed indicates that it might have been the hope of Mr. Rubloff that after the conclusion of certain issues, a settlement agreement could be worked out.

It has always been our hope that perhaps some settlement agreement could be worked out, but it appears now that that's just not possible because of the total refusal of opposing counsel to ever provide us any evidence whatsoever that his clients can prove any claim that they've made.

We stated this, Your Honor, I think at every hearing we have had, we have always stated that we would be willing to discuss settlement, but we are not going to settle any case, we are not going to pay one penny unless we have some evidence, any evidence to indicate that Mr. Abrahams' clients can prove any of the claims that they are asserting.

Your Honor, we have filed 33 sets of discovery in these cases so far. We have asked for documentation. What documents do you have that are required by the regulation that you can maintain? And we have gotten nothing. I take that back, Your Honor, we have gotten documents in two of the 1989 cases, partial documentation, not full documentation.

In the other 31 cases, we have received absolutely nothing, and Your Honor, it is our position that these matters have just gone on for so long it is obvious that Mr. Abrahams' does not have any evidence which his clients can prove their cases.

Discovery is getting nowhere. We are having to file motions to compel to even find out the names and addresses of witnesses which are provided, and Your Honor, Mr. Abrahams has made allega-

---

**17.** Complaints in the originally filed 231 related hockey player tax refund cases were all signed and filed by Mr. Abrahams on behalf of the plaintiffs named in each caption. The plaintiffs themselves did not file or sign the petitions in the United States Court of Claims or the complaints in the United States Claims Court.

tions that we are trying to price his clients out of Court by doing discovery.

We are willing to accommodate Mr. Abrahams. We are willing to waive an further discovery in all of these cases. Let's just set these cases for trial and get rid of them.

As far as we're concerned, we will be willing to come into Court without any discovery, without knowing what any witness is going to say, and we will hear it on the witness stand for the first time.

If he can prove his case, Your Honor can decide whether he is entitled to get anything. If he has any evidence and wants to avoid a trial, he can give it to us and we can either stipulate or we can enter into a settlement.

But we have been beating our heads against the wall now for several years since I have been involved in these cases, and I have yet to see any evidence to support anything.

Your Honor, I see nothing that would reach the level of any settlement being reached for the Government. There are certain specified procedures that have to be followed before any binding settlement agreement can be arrived at. Those procedures have been set with Mr. Abrahams several hundred times along with each notice of appearance.

There is a sheet that we attach to it that sets out the settlement, how you settle a case with the Department of Justice which has been attached to prior pleadings.

And as stated by the court in a colloquy with Mr. Abrahams on December 2, 1991: Mr. Abrahams, frankly, you are so far off the mark with respect to your settlement discussion, the Department of Justice has indicated they are not interested in settling. I cannot force a settlement. I can endorse a settlement. . . .

The point is, however, that I cannot force a settlement if one party does not wish to enter into a settlement. And that is the bottom line. There is no settlement agreement. Whatever you think you had, somewhere you missed it. I do not know what it is, or where the miscommu-

nication occurred, but it simply does not exist.

A settlement proposal or methodology for resolving cases filed in the tax court would not resolve matters in this court. The two courts, the United States Tax Court and the United States Claims Court, are two separate federal jurisdictions, which operate independently of one another. Mr. Abrahams has tried to insert confusion into the record by submitting documents from other proceedings, whether in the Tax Court or in proceedings against him personally, without documenting the relevance of those submissions. Unless the information to be introduced into these Claims Court proceedings is a matter appropriate for judicial notice, this court will carefully review the evidentiary proprietary and probity of any information presented for inclusion in the record of any of the cases at issue in this court.

\* *Mr. Abrahams Alleges that: "In May of 1989, the Department of Justice, without prior notice, issued notice of depositions requiring the attendance of nine (9) of the Plaintiffs in San Diego, California, some of those cases were in suspense."*

Mr. Abrahams asserts that in May of 1989, prior to direction by this court to move forward on the tax refund cases, the Department of Justice, without prior notice, issued depositions which required the attendance of nine plaintiffs in San Diego, California. Mr. Abrahams suggests that some of the nine cases were in suspense. In its opposition to Mr. Abrahams' motion to disqualify the Department of Justice, defendant asserts that the notices of deposition of pre–1989 filed cases were withdrawn before any subpoenas were issued or any attempt was made to take the noticed depositions. Defendant therefore maintains that it was correct in stating that no discovery was conducted in the pre–1989 cases until after March 21, 1991, when the court made it perfectly clear that these cases were moving forward and no stays applied to any of the related hockey player tax refund cases. A statement of defen-

dant's counsel at the June 27, 1991 hearing is revealing on this subject:

Your Honor, with regard to the stipulations, we have reviewed the stipulations. There were some 430, roughly 430 stipulations entered into. The Government has never made any attempt to withdraw from those stipulations and we have no desire at the present time to withdraw from those stipulations, so I don't know what Mr. Abrahams' complaint is.

THE COURT: You are saying—let me make sure I understand you—you are saying that if we were to do something like go to trial immediately, that those stipulations would govern at trial from the vantage point of the Department of Justice.

[DEFENDANT'S COUNSEL]: That's right, Your Honor. The Department of Justice has entered stipulations for trial purposes which in connection with an earlier trial setting that Judge Miller had, and your Honor, we have reviewed them. We feel that most of them relate to stipulating to documents, stipulating to testimony that certain witnesses would provide, and we have no problem with—I mean, not that we have no problem, but we don't see anything in there that would rise to the level of asking this Court to relieve the Government from prior stipulations.

So I don't see where there is any argument that the Government is trying to turn back from anything that it has done before. There was a test case procedure tried. It was hoped that that would be a way of disposing of the cases them.

Unfortunately, it didn't work. We are here 15 years later and nothing has happened. Your Honor, we are willing to— we thought maybe we could resolve some of this, settle some of this by discovery. Get some of the documents, see what they had, try to eliminate some of these substantiation issues.

All we have gotten in discovery is names of some witnesses, no addresses, no further identification. We think it would be—you know, down the road we can go through discovery for two years,

four or five motions to compel on each batch of discovery, and ultimately we will still have to have a trial to resolve these cases.

So our position on the stipulations is, you know, if it means we can get rid of these cases expeditiously, the Government is willing to abide by the stipulations it has already entered into.

With regard to discovery, once again, if it means we can get rid of these cases expeditiously, the Government is willing to forego any further discovery in these cases.

Your Honor, we are willing to make this concession because, primarily, because of what happened in the Tax Court. There were approximately 115 cases for which there were not stipulated decisions entered into and Judge Goffe set all those cases for trial, and when no one showed up for the trial, ultimately they were all dismissed, and quite frankly, we have hopes that the same thing will happen here.

\* *Mr. Abrahams Alleges that: "On May 30, 1989, Counsel sent a letter to [defendant's attorney of record] apprising him of statements made regarding discovery in support of the enforcement of the summons. (See Exhibit B: Letter of May 30, 1989 to [defendant's attorney of record] Mr. Rubloff stated that Summons was not issued improperly because there was no need for discovery. Mr. Rubloff stated by declaration that discovery was completed. Additionally, the letter was in response to the threat that the Department of Justice was going to inform Judge Horn of Counsel's indictment if Counsel refused to so inform the Court. Counsel advised the Department of the impropriety and ethical violations in persisting to inform Judge Horn of the indictment."*

Although Mr. Abrahams' allegations are confusing and unclear, he appears, once again, to be arguing that the Department of Justice sought discovery when plaintiffs' counsel felt discovery already had been closed in the related hockey player tax re-

fund suits. Mr. Abrahams tries to support his allegations with a declaration, dated in January, 1988, of defendant's former counsel of record in support of an Internal Revenue Service summons. The declaration of defendant's former counsel of record stated:

Virtually all discovery in the Claims Court cases was conducted and completed in the late 1970's and early 1980's, well before the summons in this case was issued.

The discovery rules and procedures in the United States Claims Court were completely adequate to obtain all information and documents relevant to my cases. I would have had no need for additional discovery outside those rules and I have confined all my discovery activities to conform to such rules.

Mr. Abrahams also cites to a letter, dated May 30, 1989, that he sent to defendant's counsel of record which references this declaration of defendant's former counsel of record. He attached a copy of this letter to his motion for disqualification of the Department of Justice in the *Favell, et al.* filing only.

As discussed above, some of the related cases at issue appear to have been filed after Mr. Rubloff left the Department of Justice and, therefore, no discovery cutoff was appropriate to those cases. Therefore, even when the offer of defendant's counsel to waive future discovery was reaffirmed by defendant's counsel, but not accepted at the time by Mr. Abrahams, the court concluded that there was no other way to proceed but to trial, and to lift all prior stays and suspensions. Lifting of any stay or suspension, to the extent that it may have existed previously, was not, however, followed by extensive discovery. It appears, in fact, that Mr. Abrahams has conducted no additional discovery on behalf of his clients.

Mr. Abrahams also proposes that another purpose of his May 30, 1989 letter to defendant's counsel was to advise defendant's counsel that it would be improper and would violate ethical rules to inform this Judge of Mr. Abrahams' indictment. The court has already discussed, above, its belief that the indictment is irrelevant to the plaintiffs' tax refund proceedings at hand and that the court is not influenced in these related hockey player tax refund cases by any of the extraneous proceedings to which Mr. Abrahams continually refers.

\* *Mr. Abrahams Alleges that: "In spite of such warning, the Department of Justice continued discovery requests by filing Motions to Compel and ignoring the discovery taken of the five (5) test case Plaintiffs. Discovery was continued in spite of the Department of Justice's statement made to this Court that discovery had been completed."*

Mr. Abrahams alleges that the Department of Justice continued to make discovery requests after he had warned defendant's counsel that such discovery was in contravention of an agreement to take five test cases to trial, and after the Department of Justice told this court that discovery had been completed.[18] As pointed out above, it is the role of the court to declare a discovery cutoff date. Although this court would welcome ways in which to shortcut the proceedings, all previous attempts of the parties to join together and achieve such results have failed and more than fifteen years have passed since some of these cases were filed. It is true that Judge Miller tried to designate five test cases and intended to try those cases first. However, those trials were never held and that approach was found by this court, many years later, unfortunately to have failed to resolve any of the cases. The court can only reiterate that it made a conscious determination that the only way to finally move these tax refund cases forward would be to schedule and to hold

---

18. As is discussed above, on several occasions, including at a hearing on June 27, 1991, the Department of Justice attorney offered to forego all future discovery in the related hockey player tax refund cases and go immediately to trial. At the hearing, although pressed to respond to the offer made by the Department of Justice, Mr. Abrahams refused to accept or reject the offer. He simply kept repeating that he has not been in favor of going to trial.

individual trials. The court made this decision because even after the common legal issues in the cases have been ruled on by the court, and even if the key issues are appealed and resolved by an appellate court, the cases of each of the individual taxpayers will still require individual factual determinations of the validity of the deductions claimed. In good conscience, this court feels that each individual plaintiff who files a lawsuit in this court is entitled to have his or her case heard by the court. Trials in these tax refund cases are long overdue.

* *Mr. Abrahams Alleges that: "On May 30, 1989, a letter was sent to [defendant's attorney of record] apprising him of the intention to apply for certification of the exclusion issue and requesting suspension because 'such would avoid two trials and serve to promote a settlement'."*

This court fully considered Mr. Abrahams' motion for certification to appeal the court's decision which granted defendant's cross-motion for partial summary judgment and issued an Opinion on that issue in *Favell v. United States*, 22 Cl.Ct. 132 (1990). This court explained its rationale in denying certification as follows:

> [U]pon serious reflection, and after another review of the record in these cases, the court feels that it would be inappropriate to endorse plaintiffs' motion to certify portions of the cases for appeal when trials are likely or even inevitable in each of the 230 cases, according to plaintiffs' counsel. To be sure, certification is appropriate in certain cases as a way to streamline litigation. These cases, however, do not present the restricted situation when it is in the best interests of case management and fairness to certify all or some of the issues in the cases.

> In good conscience, this court is hard-pressed to allow plaintiffs and their counsel yet another opportunity to appeal the "income allocation" question to a third Circuit Court of Appeals when the United States Court of Appeals for the Second and Fourth Circuits, the United States Tax Court, and the United States

Claims Court have all ruled, with consistency, that the government should prevail on the issue. Even Mr. Abrahams, counsel for the plaintiffs, at a status conference held on July 2, 1990, stated that there were not any differences between the various cases in each of the separate courts, except that he had produced more facts and affidavits for the Claims Court to review. Moreover, despite the submission of what Mr. Abrahams has termed additional information, this court, in its Opinion on the Motion for Partial Summary Judgment, still has found against plaintiffs and is in agreement with all the other federal courts which have previously reviewed this issue. *Favell*, 16 Cl.Ct. at 700. The court fails to see the request for certification as anything other than just another, dilatory tactic on the part of plaintiff's counsel and another way to keep this matter unresolved, despite plaintiff's counsel's verbal and written protestations to the contrary. In the interests of judicial efficiency, this court takes the position that if issues remain after the trials of all these cases, which plaintiffs' counsel has indicated he intends to pursue, the United States Court of Appeals for the Federal Circuit can address all the issues at one time, including the "exclusion" or "income allocation" issue.

*Favell v. United States*, 22 Cl.Ct. at 146.

■ The court also has previously indicated to the parties on the record that only the court, and not defendant's counsel, can certify claims for appeal to the United States Court of Appeals for the Federal Circuit, and only the court, not a party, can suspend cases. Consequently, failure to certify or suspend cases cannot form the basis for a demonstration of any wrongdoing on the part of the Department of Justice. Even if the Department of Justice had agreed with plaintiffs' counsel that they should seek certification, the final decision as to whether or not to certify, or to suspend any case filed in the United States Claims Court, is solely the responsibility, and within the discretion, of the court. The statute governing the entry of an or-

der by the United States Claims Court granting certification to appeal an interlocutory order to the United States Court of Appeals for the Federal Circuit is 28 U.S.C. § 1292(d)(2) (1988). Section 1292(d)(2) states:

> When any judge of the United States Claims Court, in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

28 U.S.C. § 1292(d)(2).

The court must assume full responsibility for the decision not to certify, and, right or wrong, reach its best judgment as to whether certification is appropriate. Despite Mr. Abrahams' repeated attempt to raise the same issue over and over again, this court believes that it has fully disposed of his request for certification of the issues resolved in the court's Opinion issued in *Favell v. United States,* 16 Cl.Ct. at 700.

> \* *Mr. Abrahams Alleges that: "Reference was also made to what Counsel believed were violations of the Code of Professional Ethics, especially Rules 3.5; 8.4(a); 8.4(b); 8.4(e); and 8.4(f) by informing this Court of the indictment. Model Penal Code Section 242.1 states it is a crime to obstruct justice and a felony to conspire to obstruct justice. (See Exhibit C: Declaration of Charles L. Abrahams attached hereto.)"*

Mr. Abrahams alleges that the Department of Justice violated Rules 3.5, 8.4(a), 8.4(b), 8.4(e) and 8.4(f) of the "Code of Professional Ethics," [19] and Section 242.1

of the Model Penal Code by informing this court of Mr. Abrahams' indictment.

Model Rule 3.5, entitled "Impartiality and Decorum of the Tribunal," states:

A lawyer shall not:

(a) seek to influence a judge, juror, prospective juror or other official by means prohibited by the law;

(b) communicate *ex parte* with such person except as permitted by law; or

(c) engage in conduct intended to disrupt a tribunal.

Model Rules of Professional Conduct Rule 3.5.

The court finds that, once again, Mr. Abrahams has not provided any evidence to support his bald allegations that the Department of Justice sought to influence this Judge in any way prohibited by law or sought to engage in conduct intended to disrupt any tribunal, including this court. The record, in these 231 related hockey player tax refund cases demonstrates to the contrary. The Department of Justice has and continues to cooperate with the court fully. As is described above, this court has already disposed of Mr. Abrahams' allegations that defendant's attorney of record had *ex parte* communications with Mr. Abrahams' clients in the Opinion issued on January 24, 1992. Moreover, it is Mr. Abrahams who repeatedly raises his own involvement with the law in proceedings before this court. The Department of Justice attorneys assigned to these cases consistently meet their deadlines, or, when necessary, request extensions in a timely fashion. Mr. Abrahams, on the other hand, has failed to appear for a scheduled four-day hearing in the *Tannahill* case on a motion he filed with this court, has sought over and over again to obtain time extensions, has ignored numerous filing deadlines ordered by the court and has consistently ignored discovery requests from the defendant, even after ordered to comply by this court. As the record of all the related

---

**19.** Although plaintiffs' counsel generally cites to the "Code of Professional Ethics," the rules to which plaintiffs' counsel refers are located in the Rules of Professional Conduct. Plaintiffs' counsel fails to delineate which state's rules were violated. Therefore, for the purposes of this discussion, the court will refer to the Model Rules of Professional Conduct when addressing Mr. Abrahams' allegations.

hockey player tax refund cases reflects, this court has been patient with Mr. Abrahams in order to try to give each plaintiff a fair opportunity to prove his/her tax refund case. The court finds Mr. Abrahams does not meet his burden of proving alleged misconduct by the Department of Justice under Model Rule 3.5.

The relevant sections of Rule 8.4, entitled "Misconduct," state:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

. . . . .

(e) state or imply an ability to influence improperly a government agency or official; or

(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

Model Rules of Professional Conduct Rule 8.4(a), (b), (e), (f).

Yet another time, Mr. Abrahams has made non-specific, bald allegations or has failed to set forth any evidence to support his allegation that the Department of Justice violated any of the sections of Rule 8.4 listed above. Unsupported allegations are simply insufficient grounds for this court, or for any other court, to issue a ruling in his favor. The record in these 231 related hockey player tax refund cases is replete with examples of such blatantly unsupported allegations by Charles L. Abrahams, counsel for plaintiffs, against the defendant, the United States, the IRS, the defendant's counsel and this court. This court endeavors each time to resolve the issues on the merits. The record continues to bear witness to the propriety of defendant's counsel's behavior and the lack of any support to back up Mr. Abrahams' numerous allegations.

Mr. Abrahams also suggests that the Department of Justice violated section 242.1 of the Model Penal Code. This section, entitled "Obstructing Administration of Law or Other Government Function," states:

A person commits a misdemeanor if he purposely obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this Section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with the law without affirmative interference with governmental functions.

Model Penal Code § 242.1.

The court also finds that Mr. Abrahams has not set forth any evidence or described any specific charges to indicate that the Department of Justice has violated section 242.1 of the Model Penal Code by obstructing the administration of the law. Moreover, it should be noted that the Model Penal Code is a model on which individual states may base their state penal codes. Mr. Abrahams has not alleged that the Department of Justice has violated the actual criminal law of any particular state or federal jurisdiction.

\* *Mr. Abrahams Alleges that: "The Motion for Stay filed on February 21, 1990, also requested a stay because of the ex parte discussions with some of the litigants by the special agent. The special agent as part of the investigation spoke to the Plaintiffs. It was clearly stated as reason for the request for stay that these discussions with these litigants would have an impact on all related litigants and would taint the entire proceedings unless the litigants were somehow informed of the merit of their claims."*

Mr. Abrahams alleges that there were *ex parte* contacts between "the" unspecified special agent, and "some of the plaintiffs in the related hockey player tax refund

cases." Mr. Abrahams' assertions are completely vague as to which special agent, which plaintiffs and which investigation or activity. If Mr. Abrahams' references, once again, are directed to the summons enforcement proceeding in the Southern District of California, as the defendant points out in its opposition to plaintiffs' motions, the court, at a July 2, 1990 hearing, held that such alleged contacts, if they did indeed occur, do not have a bearing on the present tax refund proceedings. At the same hearing in front of this court, in responding to Mr. Abrahams' repeated statements that "my clients were contacted by the Internal Revenue Service and told that their claims were false, which affects their right to litigate in this Court," the court said:

> The case in this Court rests on what is on file, the evidence that's produced to support that case, or the lack of evidence that is not in the case when it is submitted for decision. It has very little to do with what someone was told or not told. That's not going to have any impact on me whatsoever.

> I don't much care about what anybody was told about anything. If you've got a piece of hard evidence that's produced in a proper evidentiary way, then I'm going to take account of it.

Clearly, it is this court's duty to decide the merits of the tax refund cases brought by the related hockey player plaintiffs. It is odd that Mr. Abrahams is alleging that the proceedings will be tainted unless the litigants, his clients, are informed during the proceedings that their cases have merit, when it is the merit or lack of merit of their refund claims which is before the court for decision.

At the July 2, 1990 hearing, when Mr. Abrahams argued that the alleged *ex parte* discussions of the Internal Revenue Service with his clients caused him to lose his credibility with his clients, the court responded:

> There's nothing that I should or can do to get you back your credibility. You're going to have to do that on your own. I assume that if the indictments have been dismissed you can tell your client that. If they haven't, you can't.

Nor is there any indication in the record that any plaintiff acted upon anything which may have been said to that plaintiff by an IRS agent. In fact, it is not clear from Mr. Abrahams' filings what it is that was allegedly said. The court believes, as indicated above, that Mr. Abrahams' claim that a special agent spoke with the plaintiffs in the related hockey player tax refund cases does not support Mr. Abrahams' assertion that the Department of Justice should be disqualified.

\* *Mr. Abrahams Alleges that: "The related Plaintiffs, because they were involved in the same hockey industry, had probably heard about the indictment and the Internal Revenue Services statements which were made concerning their filing of false claims."*

Mr. Abrahams alleges that "the related Plaintiffs, because they were involved in the same hockey industry, had *probably* heard about the indictment and the Internal Revenue Services statements which were made concerning their filing of false claims." (emphais added). First, the court notes that this allegation by Mr. Abrahams is extremely vague and hypothetical. The allegation merely suggests that some unspecified plaintiffs *may* have heard about the indictment, rather than even alleging that a particular named plaintiff had heard anything specific. Furthermore, there is no documentation of any actual harm to any plaintiffs' cases before this court; nor, as in the allegation discussed immediately above, is there anything in the record to suggest that any of the related hockey player tax refund plaintiffs altered the course of their conduct with respect to these tax refund lawsuits as a result of having heard of anything other than information they received from their own counsel and Orders of this court. Consequently, it is clear that Mr. Abrahams has failed to set forth any evidence showing that the plaintiffs were misinformed or injured by an employee of the Department of Justice in these cases.

\* *Mr. Abrahams Alleges that: "The recent ex parte discussions with the litigants manifest a flagrant violation of*

*Rule 11 of the Rules of the United States Claims Court (RUSCC) and various Canon of Ethics and Disciplinary Rules. The Department of Justice continues in its persistence to gain unfair advantage by either outpricing the litigants or otherwise adversely tainting the entire proceedings, and thus, forcing the Plaintiffs to dismiss their action."*

The allegation regarding *ex parte* discussions has been discussed in detail above. In this allegation, Mr. Abrahams, however, also alleges that the Department of Justice has tried to gain unfair advantage by outpricing the plaintiffs as a result of forcing the cases to go to trial. Again, as previously discussed, when Mr. Abrahams filed lawsuits, on behalf of the 231 plaintiffs in the related hockey player tax refund cases, he should have been aware that each plaintiff might have to pursue a full course of litigation and that settlement could not be guaranteed to the clients. To the contrary, however, evidence in the record, including form letters sent by Mr. Abrahams to some of his clients seems to suggest that he painted an overly rosy picture that he had or could achieve a settlement and that these cases would never go to trial.

The Rules of the United States Claims Court fully set out the guidelines for prosecuting a lawsuit in this court. Any plaintiff who files a case in this court, and certainly any attorney who files one on behalf of a plaintiff, as is the case in these 231 actions initiated by Mr. Abrahams on behalf of his clients, should be aware that the case will proceed through discovery and trial, unless a shortcut can be negotiated between the parties, such as settlement, or resolution through dispositive motions. As also discussed above, settlement requires the agreement of both parties to the litigation. Although it was hoped by all involved in these cases that resolution of the Cross–Motions for Summary Judgment might have advanced settlement negotiations, no settlement in the United States Claims Court litigation has been achieved, despite Mr. Abrahams' unsupported, repeated assertions to the contrary. Of the 231 cases, some, however, have been disposed of by jurisdictional motions to dismiss, as evidenced by the court's Opinions issued February 22, 1991 and February 11, 1992. Additionally, certain other cases have been dismissed by plaintiffs who have decided not to pursue their claims and who have asked the court to dismiss the actions filed on their behalf by Mr. Abrahams. For the remaining cases, what has truly raised the price of the litigation are disorganized baseless motions, such as the instant one, endless repetition of charges and countercharges, and missed deadlines by Mr. Abrahams which require enforcement by the court.

After far too many years, this court realized that only scheduling and holding trials in these cases would move the cases forward. As a result, the court began to schedule trials. Although admittedly time consuming, and costly to all involved, the plaintiffs, the Department of Justice, the court and the taxpayers, given the inability of the parties to settle or even to stipulate to factual evidence, the court has no alternative but to set trials in the individual tax refund cases. Nineteen (19) trials have already been set, and either have been completed or the cases have been dismissed. Four (4) cases are fully briefed and will be the subject of final Opinions, shortly. A number of the cases which have been tried and are in the midst of post-trial briefings, fourteen (14) more are scheduled for trial and the balance of the cases will be scheduled, *seriatim*, until all the cases are resolved. The disposition of the cases already tried may further resolve certain common legal issues, as did the court's earlier Opinion on defendant's Motion for Summary Judgment.[20] However, because the tax situation, and the deductions claimed by each plaintiff in these cases, presents itself differently, even resolution of the common issues will not necessarily resolve the balance of the cases, even if the legal issues are appealed to the circuit court and resolved at that level.

**20.** *Favell v. United States,* 16 Cl.Ct. at 700.

Mr. Abrahams has frequently been heard to say, that appeal will lead to further settlement discussions. Whereas in the normal case that might provide a working assumption for further progress, in this case, history in these cases dictates otherwise. Mr. Abrahams' appears to have been talking settlement for years, first with the IRS at the administrative level, then in the Tax Court, during those proceedings and throughout these proceedings in the United States Claims Court. Unfortunately, settlement has proven, over the course of sixteen years, to be an empty hope which seems not to come to fruition. In any event, each plaintiff is entitled to be heard on the merits. Absent a resolution of each plaintiff's case by way of dispositive motion or settlement, agreed to by both parties, the matter must be, and will be, tried by this court. When a plaintiff files an action in a federal court, presumably, that plaintiff intends to prosecute that action to conclusion, and must be prepared for the eventuality of trial.

■ In addition to a discussion of the factual allegations put forward by Mr. Abrahams certain general principles raised by the Department of Justice in their responsive filings, also should be addressed by the court. Relevant statutory and case law dictates against disqualification of the entire Department of Justice, when it is acting in its capacity of defending the United States and an executive branch agency,

in the instant cases, the Department of the Treasury, Internal Revenue Service.[21] The basic governing statute which grants the Attorney General the authority and responsibility to litigate on behalf of the United States, 28 U.S.C. § 516, states:

> Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General.

28 U.S.C. § 516 (1988).

Additionally, 28 U.S.C. § 519 grants the Attorney General the authority to supervise litigation to which the United States is a party. Section 28 U.S.C. § 519 states:

> Except as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party, and shall direct all United States attorneys, assistant United States attorneys, and special attorneys appointed under section 543 of this title in the discharge of their respective duties.

28 U.S.C. § 519 (1988).

Furthermore, the Code also states:

> (a) Except when the Attorney General in a particular case directs otherwise, the Attorney General and the Solicitor General shall conduct and argue suits and appeals in the Supreme Court and suits

---

**21.** As pointed out by the defendant, Mr. Abrahams has failed to cite any pertinent legal authority to support his claim that the entire Department of Justice could be disqualified from handling these cases. Defendant notes that plaintiff relies mainly on 28 U.S.C. § 515(a) (1988), which states:

> The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought.

Mr. Abrahams also cites to the case of *In re Persico*, 522 F.2d 41 (2nd Cir.1975), in which the court considered the ability of an attorney, who

was not a United States Attorney or Assistant United States Attorney, to conduct grand jury proceedings, but stated:

> [A]n officer or other full-time employee of the Department of Justice must be "specifically directed" to conduct grand jury proceedings if he is not a United States Attorney or an Assistant United States Attorney. We hold that such a specific direction to an attorney regularly employed on a full-time basis by the Department of Justice need not be embodied in a single written authorization, but may be implied from other writings, guidelines, practices and oral directions transmitted through a chain of command within the Department.

*Id.* at 66. Defendant correctly asserts that *Persico* does not support Mr. Abrahams' argument because the case specifically states that only an attorney, specially appointed by the Attorney General pursuant to 515(a), may represent the United States.

in the United States Claims Court or in the United States Court of Appeals for the Federal Circuit and in the Court of International Trade in which the United States is interested.

28 U.S.C. § 518 (1988).

Courts have consistently upheld the basic principle that the Attorney General is given power over, and general supervision of, all litigation to which the United States or an agency thereof is a party. *Dresser Indus., Inc. v. United States*, 596 F.2d 1231, 1237 (5th Cir.), *reh'g denied*, 601 F.2d 586 (5th Cir.1979), *cert. denied*, 444 U.S. 1044, 100 S.Ct. 731, 62 L.Ed.2d 730 (1980); *Hogg v. United States*, 428 F.2d 274, 278 (6th Cir. 1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 805 (1971); *Federal Trade Com. v. Guignon*, 390 F.2d 323, 324 (8th Cir.1968).

28 U.S.C. § 519, however, recognizes an exception to the general rule that the Department of Justice has the sole authority to conduct litigation in which the United States is a party in cases, but the exception only should apply when the law specifically so provides. For example, in *Interstate Commerce Com. v. Southern Railway Co.*, 543 F.2d 534 (5th Cir.1976), *reh'g denied*, 551 F.2d 95 (5th Cir.1977), the court noted that "Congress has expressly provided for one exception to the Attorney General's supervision power over government litigation—'except as otherwise authorized by law'—such that when an agency is given specific authorization to proceed without the assistance or supervision of the Attorney General it may do so." *Id.* at 537–38; *Federal Trade Com. v. Guignon*, 390 F.2d at 324.

This court, however, cannot agree with defendant's broad-sweeping assertion in its responsive pleadings that the Department of Justice cannot be removed from representing the United States. The Constitution of the United States provides for a system of government in which the balance of power between the executive, legislative and judicial branches of government is remarkable and enduring because of the built-in system of checks and balances between these three parts of the government.

Although, as discussed above, it is certainly not warranted in the instant case, given Mr. Abrahams' bald unsupported allegations, if a situation were to arise in which an agency of the executive branch, including the Department of Justice, were to be adjudicated by a federal court to have flagrantly violated or abused the due process rights guaranteed under the Constitution, certainly our constitutional form of government must provide for and allow a remedy. The Constitution, as interpreted by the courts, has proven to be a living and flexible document, and under our constitutional system of government no branch of the government should be allowed the unfettered, unchecked ability to act arbitrarily, capriciously or outside the dictates of the law.

The defendant argues that an indefinite suspension of this case would result if the court disqualified the Department of Justice because it would leave defendant without counsel. Defendant asserts that there could be no trial in any of the related hockey player tax refund suits until Congress passes a statute authorizing some other agency to represent the government in these cases. The court is not persuaded, if these cases so warranted, which they do not, that there would have to be an indefinite stay of the cases if the Department of Justice had overstepped the bounds of propriety and had violated the law. The court cannot believe that a practical and creative solution could not be formulated. A possible solution might be to insulate any Department of Justice officials, who could be shown to have transgressed the bounds of proper behavior, by removing those officials from these related tax refund cases and insulating them from any contact with plaintiffs' counsel, Charles Abrahams and with the cases. The Department of Justice is a large place with many attorneys in its employ. Clearly, amongst the roughly seventy-five hundred (7,500) lawyers at the Department of Justice, a few could be found whose hands were clean. Of course, in the instant case, Mr. Abrahams has failed to document wrongdoing on the part of any employees of the Department of Justice.

In the alternative, with the goodwill of all involved, including the Department of Justice and the Internal Revenue Service, the client agency which issued the administrative decisions challenged in these tax refund cases, could either represent itself in these cases or hire outside counsel, by delegation from the Department of Justice.[22] In addition, the Attorney General could delegate authority to a special counsel or another executive branch agency official so that the plaintiffs in these cases could receive a disposition of their tax refund claims. This court, however, does not have to address the difficult issues of forging a creative solution in this regard because Mr. Abrahams' arguments appear to be baseless, and there is no reason to disqualify the Department of Justice in its entirety, or any individual attorney who works at the Department of Justice from further representation in these cases.

Mr. Abrahams also argues that if the court does not disqualify the Department of Justice, in the alternative, the court should enter a default judgment against the government. The defendant correctly responds, however, that RUSCC 55(e) limits the court's ability to enter default judgment against the United States. Rule 55(e) states: "No judgment by default shall be entered against the United States unless the claimant establishes a claim or right to relief by evidence satisfactory to the court." Citing to *Ater v. United States*, 6 Cl.Ct. 344 (1984), *aff'd without op.*, 770 F.2d 182 (Fed.Cir.1985), defendant argues that the plaintiffs must establish a prima facie case before they can obtain a judgment. The court in *Ater* held:

> In substantially all of the cases where a default judgment has been sought against the United States for failure to comply with a court order, the courts have steadfastly required private litigants to establish their *prima facie* case before granting a judgment by default. *See, e.g., Klapprott v. United States*, 335 U.S. 601, 611, 69 S.Ct. 384, 388, 93

L.Ed. 1099 (1949); *King v. United States*, 31 Ct.Cl. 304, 305–306 (1896); *Marziliano v. Heckler*, 728 F.2d 151 (2nd Cir.1984); *See also*, 10 C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure*, § 2702, at 543–548 (1983).

> This court is bound by the plain meaning of the language of RUSCC 55(e). Because plaintiffs, in the case at bar, have failed to satisfy their burden of establishing a right to relief, their motion for judgment by default against the United States must be denied.

*Ater v. United States*, 6 Cl.Ct. at 347. Therefore, defendant asserts that a trial on the merits will be necessary, since the court should not enter judgment against the United States until each plaintiff proves that he or she is entitled to a refund. Thus, this court's belief that the cases must continue to be scheduled for trial in order to reach final resolution is reinforced.

## CONCLUSION

After careful study of Mr. Abrahams' unsupported and rambling arguments in support of his motions to disqualify the Department of Justice, this court concludes that the facts before the court do not support disqualifying the Department of Justice as Counsel for the Defendant, United States, in the instant related hockey player tax refund cases. Mr. Abrahams has offered as support for the many allegations included in his motions only vague references to alleged wrongdoing, and does not set forth substantive evidence of wrongdoing by Department of Justice officials. Mr. Abrahams has included in his motions several general discussions of the law on Rule 11 sanctions and his view of the court's power to enforce the Rules of Professional Conduct and the Canons of Ethics. However, despite his bald allegations, Mr. Abrahams has failed to relate these generic

---

**22.** The court notes that the ultimate defendant in these cases is the IRS and that in the United States Tax Court, the IRS represents itself.

legal discussions to the facts presented in the related hockey player tax refund cases currently before this court. For the reasons discussed at length above, this court, hereby, DENIES Mr. Abrahams' motions for disqualification of the entire Department of Justice in the related hockey player tax refund cases filed in the United States Claims Court.

IT IS SO ORDERED.